UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KARSTEN SCHUH, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) | |
| HCA HOLDINGS, INC., RICHARD M. BRACKEN, R. MILTON JOHNSON, CHRISTOPHER J. BIROSAK, JOHN P. CONNAUGHTON, JAMES D. FORBES, KENNETH W. FREEMAN, THOMAS F. FRIST, III, WILLIAM R. FRIST, CHRISTOPHER R. GORDON, MICHAEL W. MICHELSON, JAMES C. MOMTAZEE, STEPHEN G. PAGLIUCA, NATHAN C. THORNE, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, CITIGROUP GLOBAL MARKETS INC., J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., GOLDMAN, SACHS & CO., MORGAN STANLEY & CO. INCORPORATED and WELLS FARGO SECURITIES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. | ) ) ) ) | |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

## NATURE OF THE ACTION

1.     This is a class action on behalf of all persons or entities who acquired the common stock of HCA Holdings, Inc. ("HCA" or the "Company") pursuant or traceable to the Company's false and misleading Registration Statement and Prospectus issued in connection with its March 9, 2011 initial public offering ("IPO"), seeking to pursue remedies under the Securities Act of 1933 ("1933 Act").

2.     HCA operates acute care hospitals, outpatient facilities, clinics and other patient care delivery settings. HCA operates hospitals in the United States and the United Kingdom.

3.     On or about March 11, 2011, HCA filed its Prospectus for the IPO ("IPO Prospectus"), which forms part of the Registration Statement and which became effective on March 9, 2011. At least 145.1 million shares of HCA common stock were sold to the public at $30 per share (87.7 million shares sold by HCA and 57.4 million shares sold by certain selling shareholders, including an over-allotment granted to the underwriters), raising $4.4 billion in gross proceeds for the Company and the selling shareholders.

4.     On July 25, 2011, HCA issued a press release announcing disappointing second quarter 2011 financial results. The Company reported net income of $229 million, or $0.43 diluted earnings per share ("EPS"), and revenue of $8.06 billion for the quarter. The release stated in part:

> "While the Company had favorable admissions growth during the quarter, we experienced a shift in service mix from more complex surgical cases to less acute medical cases. This resulted in lower than anticipated revenue growth and earnings," said Richard M. Bracken, Chairman of the Board and Chief Executive Officer of HCA.

5.     On this news, HCA's stock declined $6.64 per share to close at $27.97 on July 25, 2011, a one-day decline of nearly 20%, on volume of 25 million shares.

6.     On October 1, 2011, *Barron's* issued an article entitled "Where Did the $15.8 Billion Go?", which questioned HCA's accounting practices. According to accounting experts, HCA improperly accounted for two major acquisitions as recapitalizations. Prior to its going public in

March 2011, HCA went through two major reorganization transactions. The first transaction occurred in November 2006 when the Company was taken private by a group of private-equity funds. The second transaction occurred in November 2010 when the private-equity funds reorganized ownership of the Company with HCA Holdings acquiring the business in order to prepare the Company to go public once again. In both instances, HCA should have accounted for the transaction as an acquisition using the purchase accounting method set forth in Statement of Financial Accounting Standards ("SFAS") No. 141, *Business Combinations*. Instead, HCA opted to use what is the functional equivalent of a pooling-of-interests method. The Financial Accounting Standards Board eliminated the pooling-of-interests method of accounting for business combinations in 2001 in order to improve the quality of information provided to investors and users of financial statements. By using this prohibited method, HCA overstated its reported earnings, as the Company was able to avoid taking significant charges, including substantial depreciation and amortization charges, which would have negatively impacted its earnings.

7.     On this news, HCA's stock declined $1.35 per share to close at $18.81 on October 3, 2011, a one-day decline of nearly 7%. This further represented a nearly 38% decline in the price of HCA stock from its IPO.

8.     The true facts which were omitted from the Registration Statement were as follows:

(a)     The Company improperly accounted for its prior business combinations in violation of Generally Accepted Accounting Principles ("GAAP"), causing its financial results to be materially misstated;

(b)     The Company had failed to maintain effective internal controls concerning its accounting for business combinations; and

(c)     The Company failed to disclose known trends and uncertainties as required by SEC regulations concerning its revenue growth rate. HCA's revenue had been steadily growing for

the past five years. Nonetheless, given that the Company would be unable to maintain its growth, the Company's past results provided investors with a distorted picture of the Company's potential growth and were not indicative of future operations.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§11 and 15 of the 1933 Act [15 U.S.C. §§77k and 77o].

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the 1933 Act.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because defendants maintain an office in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

12.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

13.     Plaintiff Karsten Schuh acquired the common stock of HCA pursuant or traceable to the IPO, as set forth in the accompanying certification, and has been damaged thereby.

14.     Defendant HCA is a non-governmental hospital operator in the United States and an integrated provider of healthcare and related services. HCA is headquartered in Nashville, Tennessee. Its stock trades in an efficient market on the NYSE.

15.     Defendant Richard M. Bracken ("Bracken") serves as Chairman of the Board and Chief Executive Officer ("CEO") of HCA. Bracken signed the false and misleading Registration Statement.

16.     Defendant R. Milton Johnson ("Johnson") serves as President, Chief Financial Officer ("CFO") and a director of HCA.  Johnson signed the false and misleading Registration Statement.

17.     Defendant Christopher J. Birosak ("Birosak") serves as a director of HCA.  Birosak signed the false and misleading Registration Statement.

18.     Defendant John P. Connaughton ("Connaughton") serves as a director of HCA.  Connaughton signed the false and misleading Registration Statement.

19.     Defendant James D. Forbes ("Forbes") serves as a director of HCA.  Forbes signed the false and misleading Registration Statement.

20.     Defendant Kenneth W. Freeman ("Freeman") serves as a director of HCA. Freeman signed the false and misleading Registration Statement.

21.     Defendant Thomas F. Frist, III ("T. Frist") serves as a director of HCA.  T. Frist signed the false and misleading Registration Statement.

22.     Defendant William R. Frist ("W. Frist") serves as a director of HCA.  W. Frist is the brother of T. Frist.  W. Frist signed the false and misleading Registration Statement.

23.     Defendant Christopher R. Gordon ("Gordon") serves as a director of HCA.  Gordon signed the false and misleading Registration Statement.

24.     Defendant Michael W. Michelson  ("Michelson") serves as a director of HCA.  Michelson signed the false and misleading Registration Statement.

25.     Defendant James C. Momtazee ("Momtazee") serves as a director of HCA.  Momtazee signed the false and misleading Registration Statement.

26.     Defendant Stephen G. Pagliuca ("Pagliuca") serves as a director of HCA.  Pagliuca signed the false and misleading Registration Statement.

27.     Defendant Nathan C. Thorne ("Thorne") serves as a director of HCA. Thorne signed the false and misleading Registration Statement.

28.     The defendants referenced above in ¶¶15-27 are referred to herein as the "Director Defendants."

29.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") is the marketing name for the global banking and global markets businesses of Bank of America Corporation. Merrill Lynch offers trading and brokerage services; debt and securities underwriting; debt and equity research; and advice on public offerings, leveraged buyouts, and mergers and acquisitions. Merrill Lynch acted as an underwriter for HCA's IPO, helping to draft and disseminate the offering documents.

30.     Defendant Citigroup Global Markets, Inc. ("Citigroup") is a large integrated financial services institution that through subsidiaries and divisions provides commercial and investment banking services, commercial loans to corporate entities, and acts as underwriter in the sale of corporate securities.  Citigroup acted as an underwriter for HCA's IPO, helping to draft and disseminate the offering documents.

31.     Defendant J.P. Morgan Securities LLC ("JP Morgan") is the U.S. investment banking arm of financial services giant JPMorgan Chase & Co.  JP Morgan provides debt and equity underwriting, M&A and corporate restructuring advisory, securities dealing and brokerage, and trade execution services for large-market companies and institutional investors. JP Morgan acted as an underwriter for HCA's IPO, helping to draft and disseminate the offering documents.

32.     Defendant Barclays Capital Inc. ("Barclays") provides securities brokerage and financial advisory services. Barclays acted as an underwriter for HCA's IPO, helping to draft and disseminate the offering documents.

33.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") operates as an investment bank in the United States. Its businesses include securities underwriting, sales and trading, investment banking, private equity, alternative assets, financial advisory services, investment research, and asset management. Credit Suisse acted as an underwriter for HCA's IPO, helping to draft and disseminate the offering documents.

34.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") is the U.S. investment banking and securities arm of Deutsche Bank AG. Deutsche Bank provides investment banking products and services. Deutsche Bank acted as an underwriter for HCA's IPO, helping to draft and disseminate the offering documents.

35.     Defendant Goldman, Sachs & Co. ("Goldman") provides investment banking, securities and investment management services to a substantial and diversified client base that includes corporations, financial institutions, governments and high-net-worth individuals. Goldman acted as an underwriter for HCA's IPO, helping to draft and disseminate the offering documents.

36.     Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a global financial services firm that, through its subsidiaries and affiliates, provides its products and services to customers, including corporations, governments, financial institutions and individuals. Morgan Stanley assists public and private corporations in raising funds in the capital markets (both equity and debt), as well as in providing strategic advisory services for mergers, acquisitions and other types of financial transactions. Morgan Stanley acted as an underwriter for HCA's IPO, helping to draft and disseminate the offering documents.

37.     Defendant Wells Fargo Securities, LLC ("Wells Fargo") is the full service investment banking arm of Wells Fargo & Co. Wells Fargo provides investment banking services in the United States and offers capital markets access through public offerings, private placements, and debt offerings, which include new issue underwriting of high yield bonds and 144A private placements,

as well as market making, research, and equity trading. It also provides advisory services for mergers and acquisitions. Wells Fargo acted as an underwriter for HCA's IPO, helping to draft and disseminate the offering documents.

38. The defendants named in ¶¶29-37 are referred to herein as the "Underwriter Defendants."

39. Defendant HCA and the Director Defendants who signed the Registration Statement are strictly liable for the false and misleading statements incorporated into the Registration Statement. The Underwriter Defendants drafted and disseminated the offering documents and were paid more than $137 million in connection therewith. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## BACKGROUND

40. HCA offers healthcare services in the United States. The Company owns, manages, or operates hospitals, freestanding surgery centers, diagnostic and imaging centers, radiation and oncology therapy centers, rehabilitation and physical therapy centers, and various other facilities. The Company's general acute care hospitals provide medical and surgical services, including inpatient care, intensive care, cardiac care, diagnostic services, and emergency services, as well as outpatient services, which include outpatient surgery, laboratory, radiology, respiratory therapy, cardiology, and physical therapy. Its psychiatric hospitals offer therapeutic programs, such as child, adolescent, and adult psychiatric care, and adult and adolescent alcohol and drug abuse treatment and counseling. HCA was founded in 1968.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS MADE IN CONNECTION WITH THE IPO

41. On or about March 9, 2011, HCA filed with the SEC a Form S-1/A Registration Statement for the IPO (the "IPO Registration Statement").

42.     On or about March 11, 2011, HCA filed its IPO Prospectus, which forms part of the

IPO Registration Statement and which became effective on March 9, 2011. At least 145.1 million

shares of HCA common stock were sold to the public at $30 per share (87.7 million shares sold by

HCA and 57.4 million shares sold by certain selling shareholders, including an over-allotment

granted to the underwriters), raising $4.4 billion in gross proceeds for the Company and selling

shareholders.

43.     The IPO Registration Statement and IPO Prospectus were negligently prepared and,

as a result, contained untrue statements of material facts or omitted to state other facts necessary in

order to make the statements made not misleading and were not prepared in accordance with the

rules and regulations governing their preparation.

44.     The IPO Registration Statement and IPO Prospectus reported net income of $1.6

billion, or $2.76 diluted EPS, for the year ending December 31, 2010. The documents further

reported net income of $1.4 billion, or $2.44 per diluted EPS, for the year ending December 31,

2009, and net income of $902 million, or $1.56 per diluted EPS, for the year ending December 31,

2008. In addition, the Prospectus provided in pertinent part:

> Our patient-first strategy is to provide high quality health care services in a
> cost-efficient manner. We intend to build upon our history of profitable growth by
> maintaining our dedication to quality care, increasing our presence in key markets
> through organic expansion and strategic acquisitions and joint ventures, leveraging
> our scale and infrastructure, and further developing our physician and employee
> relationships. We believe pursuing these core elements of our strategy helps us
> develop a faster-growing, more stable and more profitable business and increases our
> relevance to patients, physicians, payers and employers.

*     *     *

**Our Competitive Strengths**

> We believe our key competitive strengths include:

*     *     *

> *Leading Local Market Positions in Large, Growing, Urban Markets.* Over
> our history, we have sought to selectively expand and upgrade our asset base to

create a premium portfolio of assets in attractive growing markets. As a result, we have a strong market presence in 14 of the top 25 fastest growing markets with populations greater than 500,000 in the U.S. . . . We believe the strength and stability of these market positions will create organic growth opportunities and allow us to develop long-term relationships with patients, physicians, large employers and third-party payers.

*Diversified Revenue Base and Payer Mix.* We believe our broad geographic footprint, varied service lines and diverse revenue base mitigate our risks in numerous ways. Our diversification limits our exposure to competitive dynamics and economic conditions in any single local market, reimbursement changes in specific service lines and disruptions with respect to payers such as state Medicaid programs or large commercial insurers.

*     *     *

*Strong Operating Results and Cash Flows.* Our leading scale, diversification, favorable market positions, dedication to clinical quality and focus on operational efficiency have enabled us to achieve attractive historical financial performance even during the most recent economic period. In the year ended December 31, 2010, we generated net income attributable to HCA Holdings, Inc. of $1.207 billion, Adjusted EBITDA of $5.868 billion and cash flows from operating activities of $3.085 billion. Our ability to generate strong and consistent cash flow from operations has enabled us to invest in our operations, reduce our debt, enhance earnings per share and continue to pursue attractive growth opportunities.

*     *     *

## Our Growth Strategy

We are committed to providing the communities we serve with high quality, cost-effective health care while growing our business, increasing our profitability and creating long-term value for our stockholders.

45. In its first day of trading, HCA closed at $31.02 per share on March 10, 2011.

46. Due to defendants' positive, but false statements, HCA's stock closed as high as $35.24 per share on June 9, 2011.

47. On July 25, 2011, HCA issued a press release announcing disappointing second quarter 2011 financial results. The Company reported net income of $229 million, or $0.43 diluted EPS, and revenue of $8.06 billion for the quarter. The release stated in part:

"While the Company had favorable admissions growth during the quarter, we experienced a shift in service mix from more complex surgical cases to less acute medical cases. This resulted in lower than anticipated revenue growth and earnings,"

said Richard M. Bracken, Chairman of the Board and Chief Executive Officer of HCA.

48.    On this news, HCA's stock declined $6.64 per share to close at $27.97 on July 25, 2011, a one-day decline of nearly 20%, on volume of 25 million shares.

49.    On October 1, 2011, *Barron's* issued an article entitled "Where Did the $15.8 Billion Go?", which questioned HCA's accounting practices. According to accounting experts, HCA improperly accounted for two major acquisitions as recapitalizations. Prior to its going public in March 2011, HCA went through two major reorganization transactions. The first transaction occurred in November 2006 when the Company was taken private by a group of private-equity funds. The second transaction occurred in November 2010 when the private-equity funds reorganized ownership of the Company with HCA Holdings acquiring the business in order to prepare the Company to go public once again. In both instances, HCA should have accounted for the transaction as an acquisition using the purchase accounting method set forth in SFAS No. 141, *Business Combinations*. Instead, HCA opted to use what is the functional equivalent of a pooling-of-interests method. The Financial Accounting Standards Board eliminated the pooling-of-interests method of accounting for business combinations in 2001 in order to improve the quality of information provided to investors and users of financial statements. By using this prohibited method, HCA overstated its reported earnings, as the Company was able to avoid taking significant charges, including substantial depreciation and amortization charges, which would have negatively impacted its earnings.

50.    On this news, HCA's stock declined $1.35 per share to close at $18.81 on October 3, 2011, a one-day decline of nearly 7%. This further represented a nearly 38% decline in the price of HCA's stock from its IPO.

51.    The true facts which were omitted from the IPO Registration Statement were as follows:

(a)    The Company improperly accounted for its prior business combinations in violation of GAAP, causing its financial results to be materially misstated;

(b)    The Company had failed to maintain effective internal controls concerning its accounting for business combination; and

(c)    The Company failed to disclose known trends and uncertainties as required by SEC regulations concerning its revenue growth rate. HCA's revenue had been steadily growing for the past five years. Nonetheless, given that the Company would be unable to maintain its growth, the Company's past results provided investors with a distorted picture of the Company's potential growth and were not indicative of future operations.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired shares of HCA common stock pursuant or traceable to the Company's false and misleading Registration Statement for its IPO and who were damaged thereby (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

53.    The members of the Class are so numerous that joinder of all members is impracticable. HCA stock was actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by HCA or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice

similar to that customarily used in securities class actions. HCA has more than 517 million shares of stock outstanding.

54.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the 1933 Act was violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public in the IPO Registration Statement misrepresented material facts about the business, operations and management of HCA; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violations of Section 11 of the 1933 Act
### Against All Defendants

58.     Plaintiff incorporates ¶¶1-57 by reference.

59.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

60.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

61.     HCA is the registrant for the IPO. The defendants named herein were responsible for the contents and dissemination of the Registration Statement.

62.     As issuer of the common stock, HCA is strictly liable to plaintiff and the Class for the misstatements and omissions.

63.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

64.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

65.     Plaintiff acquired HCA common stock pursuant to the Registration Statement for the IPO.

66.     Plaintiff and the Class have sustained damages. The value of HCA common stock has declined substantially subsequent to and due to defendants' violations.

67.     At the time of their purchases of HCA common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to October 1, 2011. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint. Less than three years has

elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

**COUNT II**

**Violations of Section 15 of the 1933 Act**
**Against the Director Defendants**

68.     Plaintiff repeats and realleges ¶¶1-67 by reference.

69.     This Count is brought pursuant to §15 of the 1933 Act against the Director Defendants.

70.     Each of the Director Defendants was a control person of HCA by virtue of his or her position as a director and/or senior officer of HCA.  The Director Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of HCA.

71.     Each of the Director Defendants was a culpable participant in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding rescission or a rescissory measure of damages; and

E.    Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury

DATED: October 28, 2011

BARRETT JOHNSTON, LLC
GEORGE E. BARRETT, #2672
DOUGLAS S. JOHNSTON, JR., #5782
TIMOTHY L. MILES, #21605

TIMOTHY L. MILES

217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)
gbarrett@barrettjohnston.com
djohnston@barrettjohnston.com
tmiles@barrettjohnston.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
CATHERINE J. KOWALEWSKI
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

CHAPIN FITZGERALD SULLIVAN
   & BOTTINI LLP
FRANCIS A. BOTTINI
550 West C Street, Suite 2000
San Diego, CA 92101
Telephone: 619/241-4810
619/955-5318 (fax)

*Attorneys for Plaintiff*