UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| KARSTEN SCHUH, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 3:11-cv-01033 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | Judge Kevin H. Sharp |
| vs. | ) ) | Magistrate Judge Juliet E. Griffin |
| HCA HOLDINGS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |
| JULIUS DANIELS, Individually and on Behalf of All Others Similarly Situated, | ) ) | Civil Action No. 3:11-cv-01170 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | Senior Judge John T. Nixon |
| vs. | ) ) | Magistrate Judge Juliet E. Griffin |
| HCA HOLDINGS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL

The New England Teamsters & Trucking Industry Pension Fund (the "Pension Fund") respectfully submits this memorandum of law in support of its motion for: (1) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (2) approval of its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel and Barrett Johnston, LLC ("Barrett Johnston") as liaison counsel for the class.

## I.      INTRODUCTION

Presently pending in this district are three securities class action lawsuits on behalf of all purchasers of HCA Holdings, Inc. ("HCA" or the "Company") common stock pursuant or traceable to the Company's false and misleading Registration Statement and Prospectus issued in connection with its March 9, 2011 initial public offering ("IPO"), seeking to pursue remedies under the Securities Act of 1933 ("1933 Act").[1]  In securities class actions, the PSLRA requires district courts to "consider any motion made by a purported class member" and "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §77z-1(a)(3)(B)(i).

The Pension Fund should be appointed as lead plaintiff because: (1) it timely filed its Motion; (2) to its counsel's knowledge, it has the largest financial interest in the relief sought by the class; and (3) it will fairly and adequately represent the interests of the class.  *See* 15 U.S.C. §77z-1(a)(3)(B)(iii).  In addition, the Pension Fund's selection of Robbins Geller as lead counsel and Barrett Johnston as liaison counsel for the class should be approved.  *See* 15 U.S.C. §77z-1(a)(3)(B)(v).

---

[1]      The Court consolidated two of the three actions on December 20, 2011.  *See* Dkt. No. 30 in Case No. 3:11-cv-01033.  On December 12, 2011, a third action, *Daniels v. HCA Holdings, Inc.*, No. 3:11-cv-01170, was filed.  The *Daniels* action is virtually identical to the consolidated actions and should be consolidated pursuant to Rule 42(a).

- 1 -

## II.     STATEMENT OF FACTS

Founded in 1968, HCA operates acute care hospitals, outpatient facilities, clinics and other patient care delivery settings in the United States and the United Kingdom. On March 9, 2011, HCA filed a Form S-1/A Registration Statement for the IPO with the SEC, and two days later on March 11, 2011, HCA filed its Prospectus for the IPO (collectively, the "Offering Documents"). At least 145.1 million shares of HCA common stock were sold to the public at $30 per share (87.7 million shares sold by HCA and 57.4 million shares sold by certain selling shareholders, including an over-allotment granted to the underwriters), raising $4.4 billion in gross proceeds for the Company and the selling shareholders.

The complaints allege that the Offering Documents were negligently prepared in violation of the 1933 Act because they contained untrue statements of material fact or omitted to state other facts necessary in order to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. In its first day of trading, HCA closed at $31.02 per share on March 10, 2011. And due to defendants' positive, but false statements, HCA's stock closed as high as $35.24 per share on June 9, 2011.

The Offering Documents reported net income of $1.6 billion, or $2.76 diluted EPS, for the year ending December 31, 2010. The documents further reported net income of $1.4 billion, or $2.44 per diluted EPS, for the year ending December 31, 2009, and net income of $902 million, or $1.56 per diluted EPS, for the year ending December 31, 2008. In addition, the Prospectus provided in pertinent part:

> Our patient-first strategy is to provide high quality health care services in a cost-efficient manner. We intend to build upon our history of profitable growth by maintaining our dedication to quality care, increasing our presence in key markets through organic expansion and strategic acquisitions and joint ventures, leveraging our scale and infrastructure, and further developing our physician and employee relationships. We believe pursuing these core elements of our strategy helps us develop a faster-growing, more stable and more profitable business and increases our relevance to patients, physicians, payers and employers.

- 2 -

* * *

### *Our Competitive Strengths*

We believe our key competitive strengths include:

* * *

        *Leading Local Market Positions in Large, Growing, Urban Markets.* Over our history, we have sought to selectively expand and upgrade our asset base to create a premium portfolio of assets in attractive growing markets. As a result, we have a strong market presence in 14 of the top 25 fastest growing markets with populations greater than 500,000 in the U.S. . . . We believe the strength and stability of these market positions will create organic growth opportunities and allow us to develop long-term relationships with patients, physicians, large employers and third-party payers.

        *Diversified Revenue Base and Payer Mix.* We believe our broad geographic footprint, varied service lines and diverse revenue base mitigate our risks in numerous ways. Our diversification limits our exposure to competitive dynamics and economic conditions in any single local market, reimbursement changes in specific service lines and disruptions with respect to payers such as state Medicaid programs or large commercial insurers.

* * *

        *Strong Operating Results and Cash Flows.* Our leading scale, diversification, favorable market positions, dedication to clinical quality and focus on operational efficiency have enabled us to achieve attractive historical financial performance even during the most recent economic period. In the year ended December 31, 2010, we generated net income attributable to HCA Holdings, Inc. of $1.207 billion, Adjusted EBITDA of $5.868 billion and cash flows from operating activities of $3.085 billion. Our ability to generate strong and consistent cash flow from operations has enabled us to invest in our operations, reduce our debt, enhance earnings per share and continue to pursue attractive growth opportunities.

* * *

### *Our Growth Strategy*

        We are committed to providing the communities we serve with high quality, cost-effective health care while growing our business, increasing our profitability and creating long-term value for our stockholders.

On July 25, 2011, HCA issued a press release announcing disappointing second quarter 2011 financial results, stating in part:

- 3 -

"While the Company had favorable admissions growth during the quarter, we experienced a shift in service mix from more complex surgical cases to less acute medical cases. This resulted in lower than anticipated revenue growth and earnings," said Richard M. Bracken, Chairman of the Board and Chief Executive Officer of HCA.

On this news, HCA's stock declined nearly 20%, on volume of 25 million shares.

On October 1, 2011, *Barron's* published an article entitled "Where Did the $15.8 Billion Go?", questioning HCA's accounting practices. According to accounting experts, HCA improperly accounted for two major acquisitions as recapitalizations. Prior to its going public in March 2011, HCA went through two major reorganization transactions. The first transaction occurred in November 2006 when the Company was taken private by a group of private-equity funds. The second transaction occurred in November 2010 when the private-equity funds reorganized ownership of the Company with HCA Holdings acquiring the business in order to prepare the Company to go public once again. In both instances, HCA should have accounted for the transaction as an acquisition using the purchase accounting method set forth in SFAS No. 141, *Business Combinations*. Instead, HCA opted to use what is the functional equivalent of a pooling-of-interests method. The Financial Accounting Standards Board eliminated the pooling-of-interests method of accounting for business combinations in 2001 in order to improve the quality of information provided to investors and users of financial statements. By using this prohibited method, HCA overstated its reported earnings, as the Company was able to avoid taking significant charges, including substantial depreciation and amortization charges, which would have negatively impacted its earnings. After publication of the *Barron's* article, HCA's stock declined 7%. Collectively, HCA's stock declined almost 40% from its IPO.

- 4 -

**HCA Holdings**
March 9, 2011 - October 25, 2011



The true facts which were omitted from the Offering Documents were that: (a) the Company improperly accounted for its prior business combinations in violation of Generally Accepted Accounting Principles ("GAAP"), causing its financial results to be materially misstated; (b) the Company failed to maintain effective internal controls concerning its accounting for business combinations; and (c) the Company failed to disclose known trends and uncertainties as required by SEC regulations concerning its revenue growth rate. HCA's revenue had been steadily growing for the past five years. Nonetheless, given that the Company would be unable to maintain its growth, the Company's past results provided investors with a distorted picture of the Company's potential growth and were not indicative of future operations.

## III.   ARGUMENT

### A.     The Pension Fund Is the "Most Adequate Plaintiff" and Its Motion Should Be Granted

The PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

- 5 -

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z-1(a)(3)(B)(iii)(I).  The Pension Fund meets each of these requirements and should therefore be appointed as lead plaintiff.

### 1. This Motion Is Timely

The notice published on October 28, 2011, advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed Class Period; and (4) the right to move the Court to be appointed as lead plaintiff 60 days later, or by December 27, 2011.  *See* Declaration of George E. Barrett in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Barrett Decl."), Ex. A.  Because the Pension Fund's motion is timely filed, it is entitled to be considered for appointment as lead plaintiff.

### 2. The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Pension Fund expended more than $1.6 million purchasing more than 55,000 shares of HCA common stock and suffered §11 damages of approximately $522,000 as a result of defendants' wrongdoing.  *See* Barrett Decl., Exs. B, C.  To the best of its counsel's knowledge, there are no other qualified investors who have either filed a complaint or a motion who have a larger individual financial interest.  Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Fund Satisfies Rule 23 of the Federal Rules of Civil Procedure at this Stage

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc).  At the lead plaintiff stage, the Rule 23 considerations are generally limited to

- 6 -

the questions of typicality and adequacy. *See Burgraff v. Green Bankshares, Inc.*, 2011 U.S. Dist. LEXIS 14573, at \*9 (E.D. Tenn. 2011) ("Under Rule 23, there are two requirements for establishing lead plaintiff: '(1) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (2) "the representative parties will fairly and adequately protect the interests of the class."'").[2]

"A claim is typical under Rule 23 if 'it arises from the same event or practice or course that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Id.* Here, the Pension Fund alleges that "'[d]efendants violated the federal securities laws by disseminating false and misleading statements'" and alleges it "'purchased [HCA] securities at prices artificially inflated by [d]efendants' misrepresentations and omissions,' like all of the other class members." *Id.* at \*9-\*10. Therefore, the Court should find its claims are typical to the claims of the other class members.

"The purpose of the adequacy requirement is to ensure there are no conflicts of interest between the purported lead plaintiff and the other class members." *Id.* at \*10. Based in Massachusetts, the Pension Fund is a multi-employer pension fund that was established in 1958 to provide retirement income to eligible participants and their beneficiaries. Currently, the Pension Fund oversees approximately $3 billion in assets for the benefit of approximately 75,000 participants and 23,000 active members. Furthermore, as an institutional investor accustomed to serving in a fiduciary capacity with prior experience serving as lead plaintiff in securities class actions, the Pension Fund is an ideal lead plaintiff candidate. *See generally* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than

---

[2]     Unless otherwise noted, all emphasis is added and citations are omitted.

- 7 -

673767_1
Case 3:11-cv-01033   Document 71    Filed 12/27/11    Page 8 of 12 PageID #: 274

class members with small amounts at stake. The claims of both types of class members generally will be typical."). The Pension Fund is not aware of any potential conflicts of interest or any matters that would preclude it from fulfilling its duties as lead plaintiff.

Thus, the Court should find that the Pension Fund has satisfied the initial Rule 23 inquiry at this stage.

**B.       The Court Should Approve the Pension Fund's Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §77z-1(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa).

The Pension Fund has selected Robbins Geller as its proposed lead counsel in this litigation. Robbins Geller, a 180-lawyer firm with offices nationwide, is actively engaged in complex litigation, particularly securities litigation. *See* Barrett Decl., Ex. D. District courts throughout the country, including courts in this State, have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, 2010 U.S. Dist. LEXIS 42915, at *13 (M.D. Tenn. 2010) (Haynes, J.) (finding lawyers with Robbins Geller to be "well qualified and experienced to represent the class"); *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (Harmon, J.) (commenting that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"). In addition, the Pension Fund has selected Barrett Johnston as liaison counsel, a prominent firm with its own well-established track record. *See* Barrett Decl., Ex. E.

- 8 -

Because these firms are highly qualified and experienced in this field, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Robbins Geller and Barrett Johnston. Accordingly, the Pension Fund's selection of counsel should be approved.

## IV.    CONCLUSION

The Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Pension Fund respectfully requests that the Court appoint it as Lead Plaintiff, approve its selection of counsel and grant such other relief as the Court may deem just and proper.

DATED:  December 27, 2011                    Respectfully submitted,

                                            BARRETT JOHNSTON, LLC
                                            GEORGE E. BARRETT, #2672
                                            DOUGLAS S. JOHNSTON, JR., #5782
                                            TIMOTHY L. MILES, #21605


                                            _____s/ George E. Barrett_____
                                            GEORGE E. BARRETT

                                            217 Second Avenue, North
                                            Nashville, TN  37201-1601
                                            Telephone:  615/244-2202
                                            615/252-3798 (fax)
                                            gbarrett@barrettjohnston.com
                                            djohnston@barrettjohnston.com
                                            tmiles@barrettjohnston.com

                                            [Proposed] Liaison Counsel

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            DARREN J. ROBBINS
                                            JAMES I. JACONETTE
                                            DANIELLE S. MYERS
                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)

                                            [Proposed] Lead Counsel for Plaintiffs

- 9 -

673767_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

| | |
|---|---|
| Matthew Sweeney | George E. Barrett |
| John S. Hicks | Douglas S. Johnston, Jr. |
| Caldwell G. Collins | Timothy L. Miles |
| Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. | Barrett Johnston, LLC |
| 211 Commerce Street, Suite 1000 | 217 Second Avenue North |
| Nashville, TN 37201 | Nashville, TN 37201 |
| | |
| Paul Kent Bramlett | Milton S. McGee, III |
| Robert Preston Bramlett | Steven A. Riley |
| Bramlett Law Offices | Riley Warnock & Jacobson, PLC |
| P.O. Box 150734 | 1906 West End Avenue |
| Nashville, TN 37215-0734 | Nashville, TN 37203 |
| | |
| Everett C. Johnson, Jr. | D. Seamus Kaskela |
| Michele E. Rose | David M. Promisloff |
| J. Christian Word | Adrienne O. Bell |
| Latham & Watkins LLP | Kessler Topaz Meltzer & Check, LLP |
| 555 Eleventh Street, NW, Suite 1000 | 280 King of Prussia Road |
| Washington DC 20004-1304 | Radnor, PA 19087 |
| | |
| James J. Jaconette | Francis A. Bottini, Jr. |
| Robbins Geller Rudman & Dowd LLP | Chapin Fitzgerald Sullivan & Bottini LLP |
| 655 West Broadway, Suite 1900 | 550 West C Street, Suite 2000 |
| San Diego, CA 92101 | San Diego, CA 92101 |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 27, 2011.

s/ George E. Barrett
GEORGE E. BARRETT

217 Second Avenue, North
Nashville, TN 37201-1601
gbarrett@barrettjohnston.com